# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DENA BOYD, KRISTIN MARTINEZ, and LISA PHINNEY, for themselves and on behalf of similarly situated others, | )<br>)<br>)<br>) |
| Plaintiffs, | ) Case No. 11-cv-0753 |
| v. | ) Judge John W. Darrah |
| ALUTIIQ GLOBAL SOLUTIONS, LLC, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Dena Boyd, Kristin Martinez, and Lisa Phinney claim that Defendant Alutiiq Global Solutions, LLC ("Alutiiq") violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by not paying overtime wages for hours Plaintiffs worked in excess of forty per week. Before the Court is Plaintiffs' Motion in Support of Judicially Supervised Notice Under 29 U.S.C. § 216(b).[1] For the reasons discussed below, the Motion is denied.

## BACKGROUND

The following facts are taken from the allegations in Plaintiffs' Complaint and from declarations (with attached exhibits) submitted in connection with the parties' briefs in support of and in opposition to Plaintiffs' Motion.

---

[1] Plaintiffs also claim violations of Illinois law on behalf of a putative class, but they have not yet moved for class certification on those claims.

Alutiiq is one of the nation's largest providers of third-party contracting services and project management in the world, employing thousands of contractors for third-party clients throughout the world. (Compl. ¶¶ 1, 10.) Its primary client is the United States government. (Compl. ¶ 8.) Alutiiq is an "employer" and an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(d) and (s). (Compl. ¶ 4.)

On September 12, 2002, Alutiiq and the United States government entered into a contract regarding the provision of logistic and supply support services. (*See* Ex. C to Lawrence Decl.) According to this agreement regarding the Inter-Service Supply Support Operations Program (the "ISSOP contract"), specific tasks were to be performed pursuant to government-issued "task orders." (*See id.* at 79.) The agreement contemplates that shifts would normally consist of eight working hours performed during five-day workweeks, that "overtime will be considered an allowable cost only when authorized in the Task Order," and that "[t]he government will not be liable for payment of overtime that was not authorized by the Ordering Officer in a task order." (*Id.* at 81-82.)

Plaintiffs are former, non-exempt hourly employees of Alutiiq who were not paid overtime compensation for all hours worked in excess of forty per week.[2] (Compl. ¶¶ 1-2.) During their time with Alutiiq, Plaintiffs were typically scheduled for five, eight-hour-and-thirty-minute workdays per week with one thirty-minute, unpaid lunch

---

[2] The word "Plaintiffs" is followed by "and similarly situated others" in most of Plaintiffs' allegations. Whether Plaintiffs have sufficiently shown that others are similarly situated is the primary question presently before the Court. As discussed below, Plaintiffs cannot rest on allegations alone.

2

break each day. (Compl. ¶ 14.) Alutiiq told Plaintiffs that they could not include more than forty hours of work on their time sheets, irrespective of the actual amount of hours worked, and that Plaintiffs were not entitled to overtime pay. (Compl. ¶¶ 15-16.) Management routinely disciplined Plaintiffs for seeking compensation for overtime that had not been preapproved. (Compl. ¶ 17.) Out of fear of retaliation and discipline, Plaintiffs did not report all hours worked. (Compl. ¶ 18.)

Because of the amount of work they had to complete and because they were subject to discipline if they took too long of a lunch break, Plaintiffs rarely, if ever, left their desks for lunch and regularly performed work during their allotted lunch periods. (Compl. ¶ 20.) Without regard for whether Plaintiffs worked during their lunch breaks, Alutiiq required that Plaintiffs record a half-hour break on their time sheets. (Compl. ¶ 21.) As a result, Plaintiffs rarely worked only forty hours in any given week. (Compl. ¶ 22.) Unless overtime was preapproved, Plaintiffs were not paid overtime for these extra hours. (Compl. ¶ 23.)

All three named Plaintiffs submitted declarations in support of their Motion, as did one of two persons who have filed notice of their consent to have their claims represented by Plaintiffs: Jamea Kemple-Calambas.[3] In addition to adding factual support for the allegations in the Complaint regarding their lunch breaks, each of the declarants also aver that they were also denied overtime for time spent working before and after their scheduled shifts.

---

[3] The declarations are attached as Exhibits 1-4 to Plaintiffs' Motion.

3

According to the declarations, all declarants are former employees of Alutiiq, employed at some point during April 2009 and November 2010. Each of them had the title "Personnel Specialist" or "Personnel Specialist II," though each had varying job duties. All of them worked for Alutiiq's third-party client, the United States Navy, at a naval base in Great Lakes, Illinois.

Alutiiq encouraged and required each of them to come in before their scheduled start time and to stay after their scheduled quit time each day. Each of them also came in early and stayed late to meet their supervisor's deadlines and expectations. Each was told by supervisors, including Alutiiq's site manager, that Alutiiq contract workers, such as Plaintiffs, were not entitled to receive overtime pay because the Navy did not provide for overtime payment in its contract with Alutiiq. Each was also told by her supervisor that she could not include more than forty hours on her time sheet, regardless of how many hours she in fact worked. Their supervisors were aware that they were working more than forty hours per week.

The declarants assert that Alutiiq's pay practices are consistent among all of its employees based on unidentified conversations with unidentified Alutiiq employees. Plaintiff Boyd states as follows:

> From talking with people I know who worked at Alutiiq and base personnel, the pay practices described above are consistent for all similarly situated persons employed by Alutiiq, during the time period that I worked at Alutiiq. I know Alutiiq has employees in at least 10 bases around the country. I have spoken with other Alutiiq employees and base personnel located in California and Virginia regarding Alutiiq pay practices. The pay practices described above are consistent at all the bases

4

that I have worked as an Alutiiq employee.[4] Based on my conversations, the pay practices described above are consistent for other Alutiiq employees in California and Virginia. At Alutiiq, to the best of my knowledge and belief, there are approximately 50 at Great Lakes and over 1,000 current and former employees who have been engaged in the same unpaid work in the last two or three years as I have described above. On information and belief, these similarly situated employees would be interested in joining this lawsuit and seeking compensation for their unpaid hours of work if they were made aware of this lawsuit and had the opportunity to join it and if they were not afraid of retaliation from Alutiiq.

(Boyd Decl. ¶¶ 35-41.)

Plaintiff Phinney's declaration is substantially the same in this regard, though she does not specifically state that she has spoken with any other personnel about pay practices at other sites; she merely states that she has talked to people she knows at Alutiiq and that she "know[s] other Alutiiq employees at the following bases: Norfolk Naval Base, Florida, and San Diego." (Phinney Decl. ¶¶ 33-35.) Plaintiff Phinney believes there are tens of thousands of potentially interested current and former employees. (Phinney Decl. ¶ 38.) Kemple-Calambas's declaration is also substantially the same as Boyd's; she states that she has spoken with Alutiiq employees at the Yoausuka [*sic*] and Guam bases and that pay practices are "consistent" with those at Great Lakes. (Kemple-Calambas Decl. ¶¶ 35-36.) Plaintiff Martinez also believes that Alutiiq's pay practices are consistent across all job sites, though she states that she has only spoken with employees at the Great Lakes base. (Martinez Decl. ¶ 35.)

---

[4] Note that each declarant identifies Great Lakes as the *only* base on which she worked.

5

## LEGAL STANDARD

The FLSA entitles nonexempt employees to receive one-and-a-half times their regular rate of pay for each hour worked above forty per week. *See* 29 U.S.C. § 207. A plaintiff may bring a collective action on behalf of "other employees similarly situated" in an action to recover unpaid overtime wages. 29 U.S.C. § 216(b). Unlike class actions under Federal Rule of Civil Procedure 23, members of a § 216(b) collective action are not bound by the court's decision unless they "opt-in." *See Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982); *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (*Jirak*).

The FLSA does not contain specific provisions governing how collective actions are to proceed, and neither the Supreme Court nor the Seventh Circuit has provided any definitive guidance regarding the burden of establishing that others are "similarly situated" for purposes of providing notice to potential claimants. Consequently, the management of these actions has been left to the discretion of the district courts. *See Jirak*, 566 F. Supp. 2d at 847 (citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170-72 (1989)).

Collective actions under the FLSA generally proceed under a two-step process. *See Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008) (*Russell*). First, the plaintiff must show there are similarly situated employees who are potential claimants. *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004). To meet this burden, the plaintiff must make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy

or plan that violated the law." *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003) (citation omitted). This initial certification is conditional, and courts use a "lenient interpretation" of the term "similarly situated." *Russell*, 575 F. Supp. 2d at 933. If a plaintiff meets this burden, conditional certification should be granted; and notice may then be sent to potential class members, allowing them an opportunity to opt in. *See Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007) (*Heckler*).

The second step of the collective-action process comes after the opt-in process is completed and discovery is underway. At that point, the defendant may ask the court to "reevaluate the conditional certification 'to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis.'" *Jirak*, 566 F. Supp. 2d at 847, 848 (quoting *Heckler*, 502 F. Supp. 2d at 779). If the court determines that such similarities do not exist, conditional certification can be revoked. *Russell*, 575 F. Supp. 2d at 933.

At the first stage, "[u]nless defendant admits in its answer or briefs that other similarly situated employees exist, plaintiffs cannot rely on their allegations alone to make the required modest factual showing." *Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007) (*Molina*); *see also Howard v. Securitas Security Servs., USA Inc.*, No. 08 C 2746, 2009 WL 140126, at *5 (N.D. Ill. Jan. 20, 2009) (stating that court should not accept all allegations as true but must evaluate the record before it). Although Plaintiffs are not required to provide conclusive support for their claims at this stage, they must provide an affidavit, declaration, or other

7

support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy." *Molina*, 566 F. Supp. 2d at 786.

## ANALYSIS

Plaintiffs are requesting conditional certification of an FLSA collective action and for the Court to authorize Plaintiffs to mail and email notice to "all current and former Alutiiq employees who performed contract or temporary work pursuant to the ISSOP contract and did not receive overtime compensation for all hours worked in excess of 40 since February 1, 2008, through the present." (Pl. Mem. 22.) Among other things, Alutiiq asserts that Plaintiffs have failed to meet their burden of establishing the likely existence of others who are similarly situated.

Plaintiffs support the allegations of their Complaint with language from the ISSOP contract and with declarations from four former employees. As explained above, the contract between Alutiiq and the United States does not provide for overtime pay unless the work is preapproved in a Task Order. Therefore, argue Plaintiffs, Alutiiq must have created a *de facto* policy of not compensating its employees for overtime on those government projects. In response, Alutiiq has submitted evidence that it paid over 100,000 hours of overtime in 2009 and 2010. (*See* Decl. of David Helmick, Director of Logistics for Alutiiq, LLC ¶ 11, attached to Def. Resp.) Alutiiq also submitted declarations from 41 employees at a number of locations, who state that they were not required to work through lunch and that they were paid for all hours worked. (*See* Exs. C1-C41 to Def. Resp.)

The Court does not make credibility determinations at this stage, and it would be improper to accept Alutiiq's evidence over conflicting evidence from the Plaintiffs. *See Russell*, 575 F. Supp. 2d at 935 & n.3. Evidence that Alutiiq paid overtime to some employees and that some employees were fairly compensated for all hours worked does not prove that other Plaintiffs and others were not provided overtime pay to which they were entitled. Nonetheless, these declarations do serve as some evidence that the alleged FLSA violations suffered by Plaintiffs were not the product of a company-wide policy. If Plaintiffs had provided evidence in support of their allegations that others are similarly situated, any conflicts and reasonable inferences would have to be resolved in Plaintiffs' favor at this stage; but, as explained below, Plaintiffs have failed to provide sufficient support for their allegations that Alutiiq had a policy that affected anyone beyond the Great Lakes location at which Plaintiffs worked.

In their Memorandum in Support of their Motion for Judicially Authorized Notice, Plaintiffs assert that "Alutiiq considered these employees to be exempt and not entitled to overtime even though they were paid by the hour and they did not fall within any of the applicable exemptions that allow for hourly compensation." (Pl. Mem. 7-8.) The purported support for this assertion comes from various personnel forms attached to Boyd's declaration; but there is no indication as to how those forms support the conclusion that Alutiiq considered Boyd – much less all employees – exempt from the FLSA's overtime requirements or that employees at other locations worked overtime

without compensation.[5] These forms do not serve as evidence that other hourly employees were not compensated for overtime.

Plaintiffs' primary support for their contention that other hourly employees are similarly situated to them comes from statements made in Plaintiffs' declarations (as well as the declaration submitted by Kemple-Calambas). As Alutiiq notes, these statements contain inadmissible hearsay; and they are not shown to be based on the personal knowledge of the declarants. As discussed above, the four former employees who submitted declarations all worked at the Great Lakes base. To the extent those employees assert any knowledge about policies and practices at other locations, that knowledge is based on conversations with people at Great Lakes and at a few other locations. Statements made by other employees to the declarants are hearsay if, as here, they are offered to prove the truth of the matter asserted.

Plaintiffs assert that "such stringent application of the Federal Rules of Evidence is inappropriate at this stage in the litigation" and cites cases in which courts in this district and elsewhere have determined that plaintiffs can support a motion for conditional certification with evidence in a form that would not be admissible at trial. (*See* Pl. Reply 8 n.10.) That approach is not universally accepted. In *Adair v. Wis. Bell, Inc.*, No. 08 C 280, 2008 WL 4224360, at *8 (Sept. 11, 2008), the district court noted a split on this issue among district courts in this circuit. After reviewing cases on

---

[5] One form appears to be one provided to Plaintiff Boyd at the time she left Alutiiq's employ. A box is checked next to "00OTHFT – Exempt FT w/benefits 33- hrs." Another form appears to have been created at Boyd's hire. A box is checked next to "00OTHFT – Other FT w/benefits 33+ hrs."

both sides of the issue, the court determined that the better approach is to require

plaintiffs to present the court with evidence that would be admissible at trial:

> I find the requirement of admissible evidence to be the better approach. As noted above, even conditional certification may have significant consequences for parties to an action. I disagree with the *White* Court's conclusion that to require admissible evidence would defeat the purpose of a two-stage certification analysis. The requirement of a modest factual showing by admissible evidence that certification is appropriate does not replace further inquiry once opt-in plaintiffs have been identified, at which point a greater degree and specificity of evidentiary support is needed to stave off a motion for decertification. Rather, it provides a meaningful basis upon which the Court may determine whether to exercise its discretion with regard to a request for court-facilitated notification of potential class members.

*Id.* The *Adair* court ultimately held that statements in the plaintiffs' declarations that they

"understood" from "observances and conversations" that coworkers were also permitted

to work without pay fell short of even the required "modest factual showing." *Id.*

at *9-10.

*Adair* is persuasive. The fact that the standard is a "lenient" one and that

Plaintiffs' burden is "modest" at this stage means that Plaintiffs need only present a

minimal amount of evidence to show the existence of persons who are similarly situated;

it does not mean that Plaintiffs can meet that burden with vague, uncorroborated,

conclusory hearsay. *Some* evidence is required.

Moreover, declarations filed in support of a motion for conditional certification

must be based on personal knowledge. In *Mares v. Caesars Entertainment, Inc.*,

No. 06-CV-60, 2007 WL 118877, at *3 (S.D. Ind. Jan. 10, 2007), the district court

determined that a plaintiff's "understanding based on alleged conversations with

unidentified persons is insufficient to establish personal knowledge as to the policies and

11

practices in effect with respect to . . . facilities other than the one at which he worked." Other courts have similarly denied conditional certification for lack of supporting evidence. *See, e.g., Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 866-67 (S.D. Ohio 2005) (striking inadmissible hearsay from affidavits supporting motion for collective action and denying plaintiff's motion for conditional certification); *Sjoblom v. Charter Commc'ns, LLC*, No. 07-CV-0451, 2007 WL 4560541, at *9-10 (W.D. Wis. Dec. 19, 2007) ("An affiant must testify about what he observed himself and not speculate about what he thinks happened.") (citing *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003)).

Here, Plaintiffs' factual showing is so lacking in foundation that it fails to meet Plaintiffs' modest burden for conditional certification. Plaintiffs assert that the statements in these declarations show "that the pay practices are consistent for all similarly situated persons employed by Alutiiq." (Pl. Mem. 4.) They do not. At best, those declarations establish that four employees at the same location were told that Alutiiq does not pay overtime and that no more than three of those former employees determined that Alutiiq's pay practices are "consistent" with other locations after talking to unidentified employees at Great Lakes and at other locations. Plaintiffs do not identify to whom they spoke, when those conversations occurred, where they occurred, or what specifically was discussed that would lead them to conclude that pay practices were "consistent." Nor is there any evidence that Plaintiffs' supervisors were acting in accordance with any global plan or that those supervisors had instructed personnel at other bases to shortchange themselves on their time sheets.

On this limited factual showing, Plaintiffs are seeking to send notice of their claims to a significant number of Alutiiq's current and former employees. Indeed, one of the Plaintiffs asserts that those affected by Alutiiq's alleged conduct could be in the "tens of thousands." (*See* Phinney Decl. ¶ 38.) Alutiiq puts that number at a lower figure, asserting that Plaintiffs are seeking to represent "more than 5,700 Alutiiq employees . . . in 113 different jobs, on more than 3,000 different Government projects, in more than 600 locations scattered throughout the country and around the globe." (Def. Resp. 1.) The Seventh Circuit has observed that discovery demands upon conditional certification can impose "a tremendous financial burden to the employer." *See Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982). For that reason, courts require some evidence of others who are similarly situated before ordering a defendant to turn over its personnel information and allowing plaintiffs to send notice of potential claims to the defendant's employees.

## CONCLUSION

The "modest factual showing" standard is not the highest burden, but it is "not a mere formality." *Adair*, 2008 WL 4224360, at *3 (citation omitted). In this case, Plaintiffs fall short. The allegations in their Complaint, read in connection with the declarations submitted by all parties, do not provide sufficient evidence that the conduct of which Plaintiffs complain is pervasive enough to affect the thousands of hourly employees at Alutiiq's various locations throughout the United States, Puerto Rico, Guam, and Japan. Accordingly, Plaintiffs' Motion is denied.

Date: 8-8-11

JOHN W. DARRAH
United States District Court Judge